Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

# UNITED STATES DISTRICT COURT

for the

Eastern District of Louisiana

_____ Division

FILED
U.S. DISTRICT COURT
E.D. of LA.

2017 SEP -6  P 2: 53

WILLIAM W. BLEVINS
CLERK

17-8712

|  |  |
|---|---|
| Kim N. Jones<br>_____<br>*Plaintiff(s)*<br>*(Write the full name of each plaintiff who is filing this complaint.*<br>*If the names of all the plaintiffs cannot fit in the space above,*<br>*please write "see attached" in the space and attach an additional*<br>*page with the full list of names.)*<br><br>-v-<br><br>Wells Fargo<br>Maurice Williams<br>Stephen Cook  Jaime Klienhart<br>_____<br>*Defendant(s)*<br>*(Write the full name of each defendant who is being sued. If the*<br>*names of all the defendants cannot fit in the space above, please*<br>*write "see attached" in the space and attach an additional page*<br>*with the full list of names. Do not include addresses here.)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. _____
*(to be filled in by the Clerk's Office)*

SECT. E  MAG. 3

Jury Trial: *(check one)*  [ ] Yes  [ ] No

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Non-Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## I.    The Parties to This Complaint

17 - 8712

SECT. E   MAG. 3

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name            Tim N Jones

Address         1712 ORETHA CASTLE Haley #211

                Neworleans          LA          70113
                *City*              *State*      *Zip Code*

County          ORLEANS PARISH

Telephone Number 3,2 .339.5425

E-Mail Address   DJKimya JGmail.com

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

Name                        Wells fargo

Job or Title *(if known)*

Address                     420 MONTGOMERY ST.
                            SanFrancisco      CA        94104
                            *City*            *State*   *Zip Code*

County

Telephone Number            415·222·3030

E-Mail Address *(if known)*

                            ☐ Individual capacity   ☒ Official capacity

Defendant No. 2

Name                        Maurice williams

Job or Title *(if known)*   Manager,

Address                     C/o wells fargo - Employee relations
                            301 S College St 22nd Flor, Mailcode D1053-350
                            Chanlotte       NC        28202
                            *City*          *State*   *Zip Code*

County

Telephone Number            415·222.3030

E-Mail Address *(if known)*

                            ☐ Individual capacity   ☒ Official capacity

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

Defendant No. 3
 Name
 Job or Title *(if known)*
 Address

Stephen Cook C/o Wells Fargo

Area Manager-

301 S College St 22nd Floor D1053-300

Charlotte          NC          28202
                   *City*          *State*          *Zip Code*

 County
 Telephone Number
 E-Mail Address *(if known)*

415·222·3030

[ ] Individual capacity    [X] Official capacity

Defendant No. 4
 Name
 Job or Title *(if known)*
 Address

JAime Kleinhert C/o Wells Fargo

Area Director

301 S College St 22nd Fl. D1053-300

Charlotte          NC          28202
                   *City*          *State*          *Zip Code*

 County
 Telephone Number
 E-Mail Address *(if known)*

415·222·3030.

[ ] Individual capacity    [X] Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

[ ] Federal officials (a *Bivens* claim)

[ ] State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

(1) Title VII of the Civil Rights Act of 1964 Race, Sex
(2) ADEA - Age Discrimination
(3) Retaliation (Whistle Blower) (5) Equal Pay - Failure to Pay
(4) Violation of Business & Professional Code

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

D.   Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

## III.   Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   Where did the events giving rise to your claim(s) occur? Wells Fargo Louisiana Office in Metairie. In the cubicle area 12/8/16 - IN Maurice williams office 12/9/16 -

B.   What date and approximate time did the events giving rise to your claim(s) occur? 12/9/16 was the termination at 400pm and the previous day 12/8/16 between 4pm and 5:30pm.

C.   What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

(See Attached)

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## IV.  Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

1) I received mental trauma - embarrassed - degraded Among my peers that may require counseling.

2) Loss of Pay

3) Difficulth In ne. Employment - AGE - rAce.

## V.  Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

1) BAck Pay for Loans that Closed/cancelleel And Denied in error.

2) Lost wages for / During unemployment

3) Attorney fees, Pension, cost Associated to Law Suit

4) Punitive damages, injuntive relief, statutory Penalties - (Proof At trial)

5) Relief as the Court seems proper

6) Total DAMAGES 920,000 $ And possibly more.

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:  9/6/2017

Signature of Plaintiff

Printed Name of Plaintiff    Tim a Jones

### B.    For Attorneys

Date of signing:

Signature of Attorney    Pro SE

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

| | City | State | Zip Code |

Telephone Number    312.339.5425

E-mail Address    DJKmya@gmail.com

Facts of Claim

**17-8712**

**SECT. E MAG. 3**

1. Wrongful termination/Retaliation- Wells Fargo and management retaliated regarding a transaction that violated their own lending guidelines "FLIP" red flag- When I notified direct manager of an altered sales agreement provided by the realtor to push this loan to approval after the assigned loan underwriter had already decided and documented the file as suspended subject to denial and conditions of a valid sales agreement. My manager and the processor tried to slip the false sales agreement by me while I was at lunch and when I discovered it at 4pm by reviewing the file, I brought it to my manager's attention who reviewed it and acknowledged the false contract and told me directly he would pursue a new contract and I asked him what about the fraudulent activity, he said to me that I needed the closing, do not worry about it and I explained to him that I did not need a fraudulent loan and was not that desperate. I had a scheduled off day the next day so I notated the permanent file in the computer system and alerted the loan underwriter via email and management. Incidentally the Loan Underwriter was on vacation so management tried to slip the fraud deal to a middle manager to quickly get this deal done with pressure from a real estate office that shares rental space with Wells in an adjoining business. This loan was pushed through intimidation and by my firing. The loan closed with the fraud alert.

2. "Gaming" and unrealistic sales goals. When I was hired on 8/13/16 and a start date a week later. Management presented sales goals from September 3, 2013. Approximately 3 years prior to my hiring.  At that time, I had no idea what the numbers were based on and management through the entire year did not provide performance reviews at all during my one-year tenure. Basically the "gaming" would be charts drafted called a "bacon" board and rankings among 10-20 branch based loan officers.  The "gaming" was that the manager's, area director, and area management would distribute sales leads to their favorites and give access to obtaining leads to their favorites and sand bag terminated/retired loan officer clients to their favorites. The lead distribution from management was completely biased and unfair. The sales goals were not calculated based on current market activity. They made new hires (myself) sign an employment contract based on 2013 and not 2016. Not until I was four months on the job was I familiar with the term "the hole" which is a deficit vehicle used to intimidate and embarrass one for not meeting unrealistic sales goals. The Louisiana market was fighting for acceptance after being rejected for years by realtors. The loan officer's income is based on internal leads and basically begging realtors to reconsider Wells Fargo.  Sales calls would result in being put out of open houses and realtors asking me never to call them that they "hate" Wells Fargo.  By management having their favorites based on race, age it was very difficult to meet the measurements set forth by unrealistic sales goals and unmeasurable. The sandbagging game allowed their favorites to always be in 1st and 2nd place and maintain employment.

3. Violation of Business and professional Codes- My first three months tenure, there was a federal audit. I passed the audit but one question that I answered was brought to my managers attention because our office had violated policy on Regulation B of FDIC LAW. The branch manager practiced and trained loan officers to keep files at their desk in oppose to submitting the files to processing and underwriting because his bonus was based on files that were approved fast. Customer's would apply in person/phone or web but would have all their

Facts of Claim

information. We are required by law to submit the application but management would punish you if you submit a loan per the regulation. When the auditor asked me the question, I told him the truth, that at this branch our manager ask us to hold the files. The auditor reported back to manager and then later he came to my cube and scolded me and said I through him under the bus. I told him, I was not going to lie to the auditor and apologized, He said he had "big shoulders". The other time he said he had "big shoulders" is when he kept telling me his manager did not want to hire me that his life depended on me doing well .. I was the only black loan officer at the time and this puzzled me and made me uncomfortable. I told him my resume and experience should be the reason that he hired me and that I am doing a good job which he did not deny. This manager has always treated me badly between denying me an opportunity to expense Wells Fargo training in my first week of employment, to not inviting me to team lunches, to not celebrating my birthday as others were celebrated and to yelling at me in front of my peers as well as calling me "Theresa" when a complicated loan transaction needed him to go over guidelines in detail, he would be flustered and call me "Theresa" which I found out later that was his wife's name. My manager was terrified of his manager and the area director. He would hardly go to bat on deals that needed special attention. He would let deals die or try to cancel the loan without review. As a result, many times there were missed opportunities to earn income and to get referral clients from existing clients. The customer were so flustered they just wanted to close and move on not based on my performance but moreover Wells Fargo's failure to meet expectation in processing and clearing loans to close, which was their reputation that I discovered one month in my tenure. Wells promised to improve, but it was not working during the year I worked there.

4.  Pricing customers higher and lock fee extension assessed. Management made me go back to my customers to either raise their interest rate and/or pay an extension fee to no fault of the customers own. Simply because we had delays in processing and underwriting and closers. It was Wells fault that loans did not close on time- not the borrowers but they made us manipulate the customer to pay the fee. I had at least 4 -6 customers who did not appreciate this and some that cancelled their loans because of it. There were also loans in the process that pre-paid appraisal fees and credit and were not refunded their fees when the loan was suspended or denied without a thorough review by an underwriting team. My manager was too intimidated and lack the underwriting knowledge to speak on my behalf. I feel that the customer should not pay added fees just and that I should not have been used to make them pay the fee. My manager would say "do you want me to call your customer" to intimidate me to make the call. Customers were surveyed at the end of the transaction and would give low scores and point out the reasons why they had a poor experience. The result of these surveys affected my earnings and my moral. Many times, the customer would name the processor as the problem and management but the loan officer is the one that is affected financially. So, my earnings and my employment with Wells would be at risk based on a faulty system.

5.  On the day that I was terminated, I was called in on my off day, the very next day from when I reported to management the "Flip" transaction. On the Wednesday before that Friday, I had a one on one meeting with my manager discussing the next quarter goals. We discussed my current sales goals and that I was the #2 originator in the branch in originating volume. There was no discussion of me being terminated two days later. In fact, he was to expense me a new black berry phone and assist me on lead generating efforts on this one on one discussion. The

next day, Thursday, we had the Flip alert and fraud contract, Friday I was terminated on my off day, ask to report to work while I was off and when I arrived I was fired and ask to clear my desk in front of my peers.  I believe I was fired for whistle blowing on the Flip deal and the fact I put the notes in the computer system detailing everything that happened that Thursday night. I was not comfortable on how my manager did not take the fraudulent sales agreement seriously. He basically said he would get another one tomorrow and tomorrow I was fired.

6.  Wrongful Termination- Wells Fargo and management stated, "failure to meet minimal standards" as the reason for termination, however with a clause "right to rehire".  The problem is their calculation of minimal standards was based on a 2013 contract and the fact they determined this firing without considering that the processing office were closed in Florida due to a national disaster for two weeks and that we had a flood and a mandate to not call customers during a national weather disaster declared in Louisiana. In their calculation of my failure to meet sales goals, management failed to review 30-60 days that I was not even able to do business due to office closures and national disasters affecting operations. I was fired in the hurricane season Aug Sept and October were the months that they faulted me for which was totally unfair. When I mentioned this to a deaf ear, they said we have the right to rehire you, you are good but not the right fit.  This was a wrongful termination, a conscious disregard for the rights of others and an act of oppression while working there. Fraud and malice on my manager's and the directors and caused me anguish and emotional suffering and I ask the court to entitle me for full recovery and punitive damages. Also, to list/call other plaintiffs or witnesses as the office was a toxic environment.

17-8712

SECT. E MAG. 3

**Retaliation and Unfair Termination**................................................
12/8/16
I reported to my manager a fraudulent sales agreement that was in the
file when I reviewed it after returning from lunch of submitted bu realtor
circumventing my review by passing it off directly to processor/mg so
I would not see it. The loan was originally pending denial due to RED FLAG POLICY GUIDE ON ILLEGAL FLIPS
TRANSACTION AND WAS IDENTIFIED AS SUCH as it had four elements do not meeting guidelines-one being the sales
agreement and ownership of the seller held as an LLC I brought this to the attention of my manager in full verification
and the next day on my off day, I was emailed by my manager to come to the office for a "meeting", I walked in the front door and to the bathroom
he stopped me and said no, I need to see you now.I asked him if I could go to the bathroom and he said now...only to state that
We decided to terminate you today, claiming it was my sales performance not meeting minimum standards. I asked to speak to the area manager
who said, well you are great, you will find another job and we have a provision to rehire you..I asked him was this because of the FLIP deal and he
said he knew nothing about it. I find that strange seeing that this was a serious violation of policy. The loan was rushed to a closing.

**My response and proof. (documents to forward)**
11/1/16
I was ranked #2 the sales person out of 15 loan officers with new loan
volume- why would I be fired in 30 days?  Also I was penalized because there were two
national disasters during the time of their analysis of my "lack" of production,  a major flood and a hurricane in two of our markets that sanctioned customers
and our processing office was shut down for a little over a week. I lost 3 weeks in August 2016
and 2 weeks in September and some time in October when the office moved which affected my volume beyond my control.
The termination was based on averaging those affected months (Aug Sept October) when I was unable to originate business and also
were the same months customer;s were not seeking purchases or refinancing due to flooding damage. All loan officers were placed on a mandatory DO NOT
CALL directive from management  for all of Louisiana and Mississippi- My termination was unjustified.


**Sex, Race, Equal Pay, Discrimination Title VII**

 Management picked teams to give leads to- I was not included on the team, although I had more experience.
.Records will reflect that there were NO BLACKS on the team.Those who were
selected on the team had more earnings because they got the customers/leads.

Processors had favorites loan officers and made the "team" loans priority ....We had only two processors that handled 15 loan officers.

My loan applicants were treated unfairly, process delayed/mishandled and miscalculations with lack of knowledge of guidelines.
I repeatedly reported this to management and he said that the processors do not report to him and that black women need to get along. We had two black processors and I was the only black loan officer at the time)
This resulted in cancellations, customer complaints and no referral business affecting my ability to reach the goals.

There were three white loan officers on the brink of firing, instead of getting fired, Management created new positions
for all three. Mike was made an assistant to Pam....Brock was made an assistant to 3 Loan officers and

Erica was assisting the manager and was given her mother's pipeline of files since the manager fired her mom a few weeks back.
Basically, Erica kept her job in exchange for clearing up her mom's loans in the system (NEPOTISM). Mom got fired for sales performance.
Her mom also had a sudden stroke on the job and was out for a month and when she returned back to work she was fired two weeks later.
I was not offered an alternative position   just terminated with an option to rehire.

Sex and Ageism.....I've worked there a year and out of all the firings. Rebecca, Ann, Debbie, Pam, Me, Scarlett and
Sheree all women over 40 were terminated.


By firing me on the first of the month 12/9/16...was strategically planned that I would not have closings to cure the deficit derived from new hire  "advances" whereby an originator will work four months on advances, the fifth month you are on
your own to cure your deficit and stay out of the "hole". But because the back-office processing was so poor, plus the closed office and hurricane and flood
of the market. I was not out of the "hole" on 12/9/16. I had enough loans in the pipeline, but they had not closed yet.

 At the time of my firing I was approximately $3k in the "hole"...which my December closings
would have gotten me out the hole...management knew it because I originated 2 million in volume and was the #2 sales person in
November...At my firing, I asked,  what about my commission on the loans in my pipeline that are close to or cleared to close? his
response was.. "if it closes in 30 days, I will get paid". With a margin of only $3k in the hole and $2 million in originating volume, it
was possible that I met performance standards.- plus initially my manager lied, he said I was $9k in the hole and
I knew my own numbers, I asked him to show me how he got $9k and he started fumbling and stuttering and had to
reveal it was about $2,700....this is why I know the reason was the FLIP file, the fraudulent sales agreement. Why else would he call me in on
my day off ? the day after I discovered the forged sales agreement?  I am confident this can be proven with the subpoena of documents.  There is a Loan processing manager who has also filed suit. Her name is Jodi Lavery...She
would be one of my witnesses, because she would try to assist in getting my loans processed knowing that the two
processors I mentioned above were sabotaging my deals...Also, Wells were making  us charge customers a rate extension penalty for missing their
locked dates when it was not the customer's fault. My direct manager would make us assess/sell this charge against customer willingness to pay.. We had to cover
up our lack of processing and backlog and pass that charge to the borrower. I have at least 3-4 customers who paid this fee
without even questioning because they were exhausted waiting to close.

My manager previously was a loan officer and was $13k in the hole when he was assigned his job as manager-the previous manager left Wells Fargo and gave him the position
without firing him for minimum production standards.  $13k versus my $3k in the hole and others still working there had more than my $3k
in the hole and kept their jobs. I filed complaints to Human Resources regarding the Flip transaction and my existing loans they owe me...Wells took
longer than 30 days because they practice "sandbagging" at the office so that other loan officers can benefit by getting the
established pipelines of those who are fired or who quit, it is a very crooked system there. I never got paid on my closed
pipeline.

*I want to sue for the loans that should have closed and I want to sue*
*for distress and the maximum financial penalty against Wells Fargo...*
*I have witnesses, This was not a layoff- it was a clean up to hide violations and irregularities.*

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: Kim N. Jones<br>1712 Oretha Castle Haley, Apt 211<br>New Orleans, LA 70113 | From: New Orleans Field Office<br>Hale Boggs Federal Building<br>500 Poydras Street, Room 809<br>New Orleans, LA 70130 |

17-8712
SECT. E MAG. 3

| | | |
|---|---|---|
| ☐ | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* | |
| EEOC Charge No.<br><br>**461-2017-00923** | EEOC Representative<br>**Mildred B. Johnson,**<br>**Intake Supervisor** | Telephone No.<br><br>**(504) 595-2827** |

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☒  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*Mildred B Johnson*
(for) **Keith T. Hill,**
**Director**

6/7/2017
*(Date Mailed)*

cc:   Elaine McClellion
**Corporate Employee Relations**
**WELLS FARGO AND CO**
301 S. College St., 22nd FL
Mailcode: D1053-300
Charlotte, NC 28202

Enclosure with EEOC
Form 161-B (11/16)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS    --    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),**
**the Genetic Information Nondiscrimination Act (GINA), or the Age**
**Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to
consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate
State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of
your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the
charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include
any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters
alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in
some cases can be brought where relevant employment records are kept, where the employment would have
been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from
the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint
or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS    --    **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than <u>2 years (3 years)</u> before you file suit** may not be collectible.  For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
<u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above,
because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge
file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

17-8712
SECT. E MAG. 3

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA  [X] EEOC | Amended  461-2017-00923 |

| Louisiana Commission On Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Ms. Kim N. Jones | (312) 339-5425 | 1960 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1712 Oretha Castle Haley, Apt 211, New Orleans, LA 70113 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| WELLS FARGO Human Resources Dept. | 15 - 100 | (504) 515-7124 |

| Street Address | City, State and ZIP Code |
|---|---|
| 4141 Veterans Road,  St  Landry Plaza,  Metairie, LA 70002 | MAY 18 2017 |

C/o HR. 420 Montgomery Street San Francisco CA 94104  Ph (415) 222-3030 (16)

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest — Latest |
| [X] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN | 12-09-2016      12-09-2016 |
| [X] RETALIATION   [ ] AGE   [ ] DISABILITY   [ ] GENETIC INFORMATION | |
| [X] OTHER *(Specify)*   Equal Pay | [ ] CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with Wells Fargo on August 17, 2015 most recently as Home Mortgage Consultant earning $12.00 per hour. On December 7, 2016, I had a meeting with Branch Manager, Maurice Williams, to discuss the goals for 2017.   There was no mention of poor performance plus I was ranked # 2 originating sales person. On December 9, 2016, I was terminated by Branch Manager, Maurice Williams; Area Manager, Steven Cook; and District Manager, Jamie Kleinert.  The company employs over than 15 persons.

According to the company, I was discharged for not meeting minimum production standard sales.

I believe I have been discriminated against because of my sex, Female; race, Black; and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended; and my wages in violation of the Equal Pay Act (EPA).

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 5/16/17 _____  Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |



# Minimum Production Volume Standards
## Application and Funded
### Distributed Retail Sales

Effective: September 3, 2013

1/3/18

| | HMC, PMB and Retail Sales Supervisors | Renovation<br>HMC, PMB and Retail Sales Supervisors |
|---|---|---|
| **New Hires** | **Six** real deal applications by the four-month employment anniversary | **Four** real deal applications by the four-month employment anniversary |
| **In role for 12 months or more**<br><br>3.2mil — | **Applications** – 6 real deal purchase applications or $1.5M Total Application (Purchase and Refinance) Real Deal Dollars in the prior 3 months.<br>**AND**<br>**one of the following must be met:**<br>1. Fund $1.35 million in loan volume in the prior 3 months<br>2. Fund $5.4 million in loan volume in the last 12 months<br>3. Fund 9 purchase units in the prior 3 months<br>4. Fund 36 purchase units in the prior 12 months<br>Must meet both application and funded volume requirements. | **one of the following must be met:**<br>1. Fund $750,000 in loan volume in the prior 3 months<br>2. Fund $3 million in loan volume in the last 12 months<br>3. Fund 6 purchase units in the prior 3 months<br>4. Fund 24 purchase units in the prior 12 months |
| **Additional Information** | • Fund refers to all funded, non-brokered first lien products<br>• Prefer to refer is credited to the funding HMC<br>• Minimum production standards do not apply to Jr. HMCs<br>• New hires not meeting the minimum requirement will be subject to termination<br>• HMCs and Retail Sales Supervisors in role for 12 months or more that are not meeting production criteria as outlined above, on an ongoing base, throughout employment will be subject to termination<br>• *We reserve the right to change or modify these minimum standards at any time.* | |

- I acknowledge receipt of Minimum Production performance standards and my understanding of its application to my employment.
- I acknowledge I have read and will adhere to the Minimum Production Standards.
- I acknowledge that the minimum production standards are subject to periodic review and may be adjusted at any time for any reason with or without notice.
- I acknowledge that these standards and any adjustments are posted on the Sales Central Portal.

L.

| Kim Jones
Print Name

Employee Signature

| 00001577392
Employee ID

| 8/13/15
Date

© 2015 Wells Fargo Bank, N.A. All Rights Reserved. Member FDIC. HRS8841 (Rev 01–05/15)



0473014014



**Consumer Lending Group
Employee Relations**

**17 - 8712
SECT. E MAG. 3**

## URGENT REVIEW- TIM SLOAN- PRESIDENT-CEO

## EMPLOYEE REQUEST TO ESCALATE TO PRESIDENT OF WELLS FARGO

415-975-7151-Fax- Phone 1-866-878-5865

RE:    Termination Review Request

You have requested to have the circumstances of your termination reviewed. Your concerns are important to us and will be reviewed in accordance with the Company's Dispute Resolution Process. Please complete the Dispute Resolution Request Form and return as follows:

| | |
|---|---|
| For former Team Members within the Consumer Lending Group (e.g. CCS, Home Lending) | **Via Mail to: Consumer Lending Group Employee Relations Attn: Termination Review** <br> MAC X2401-02A <br> One Home Campus, Des Moines, IA 50328. <br><br> Via Fax to: **(866) 672-6595** <br><br> or via E-mail to <br> **ConsumerLendingGroupEmployeeRelationsGroup@wellsfargo.com** |

Once returned, your request will be forwarded to an Employee Relations Consultant for research and response. Conducting an investigation takes time; we will make every attempt to conclude the review within 60 days. Employee Relations will contact you to discuss the findings and outcome.  Please understand that initiating this appeal does not guarantee a reversal of the termination decision.

Thank you for giving us the opportunity to look into this matter.

Wells Fargo Employee Relations
Enclosure

17-8712

SECT. E MAG. 3



# Dispute Resolution Request

**Explanation of Dispute Resolution Process**:

Wells Fargo strives to make sure that all team members have dispute resolution methods available to them when needed.  Team members are encouraged to raise concerns to management, Human Resources and/or Employee Relations. The Dispute Resolution process is designed to address concerns in an impartial and objective manner and review situations to determine if decisions were consistent with Wells Fargo's Vision and Values, employment policies and business practices.

**Procedure for Requesting Dispute Resolution**:
It's important to begin the process promptly when the issue arises (normally within 30 days), because delay can affect Wells Fargo's ability to address your concern. You may make your request by contacting your manager, Human Resources or Employee Relations, or by completing this form.

There may be some situations in which additional requests for reviews may be denied based on the circumstances.  If this is the case for your request, you will be notified of that fact by an HR professional.

If your Dispute Resolution Request is approved for review, after discussing the matter with you and gathering information from others as necessary, a decision on your request will be communicated to you either verbally or in writing upon completion of the review.

Please complete and return this form if you wish to submit this request, or call your HR Professional if you've not yet spoken to him/her (see contact information at the end of this form).

**Team Member Information**

| | |
|---:|:---|
| Date | 12/9/16 |
| Team Member's Name | Kim N. Jones |
| Employee ID # | 1577392 |
| Supervisors Name | Maurice Williams |
| Team Members Position/Job Title | HMC |
| Business Group/Dept | Tri-States- Area 1 |
| Location (City & State) | Metairie LA |
| Mail Code | 70117 |
| Team Members Work Phone | 504-830-3501 |
| Team Member's Home/Cell Phone | 312-339-5425 |
| Work Days/Hours | |
| Team Member's Personal Email | djkimya@gmail.com |
| Team Member's Home Address | 1712 Oretha Castle Haley New Orleans LA 70113 |

## II. Nature of your Concern(s)/Complaint:

Please note that it is important to provide as much detail as possible so that we may fully review your concern(s). Please take the time to consider the issues and provide all relevant information you have, answering each question to the fullest extent possible. You may attach copies of additional documentation/information (e.g., notes, emails, etc.) that you would like considered in the review.

1. Please state the reason you are requesting dispute resolution:

*Unfair termination- incorrect compensation- retaliation from mgr.- miscalculation/misrepresentation of sales practices- favoritism and unprofessional work environment.*

2. Has your employment with Wells Fargo been terminated?     If so, what were you told was the reason for the termination decision?

*Minimum Production Standards*

3. Wells Fargo's Dispute Resolution policy provides options for expressing work-related concerns. Did you speak with a member of management or Human Resources to provide information about your concern/complaint? To whom did you speak? What information did you share, and what was the response you received?

*Spoke to Glenda Longren in HR and Steve Cook AM and BM – no response and fumbled responses from management- rush to termination- did not offer me an opportunity at all to discuss details – fired on my off day.*

4. Please provide any additional information, background or context that you believe would be helpful to understanding your request.

*Context- need to review 12 month and "to date" total sales performance- inadequate support from in-house processing and staffing shortages. Also need to review loans that took too long to process, cancellations, and denials in error and preapprovals pending and renovation loans pending. - Lack of access to leads and unfair lead distribution processes applied by team leaders i.e., BM and AM.*

## III. Team Member Suggested Solution:

What outcome would you like to see as a result of utilizing the Dispute Resolution process?

*Fair compensation ( I have not received compensation on pending close pipeline), An apology for being mistreated and disrespected, Review and correction on sales practices implemented and a review of retaliation on the Padilla loan application that was in with both HLU and NDS review for RED FLAG guides on a FLIP- I informed my manager of an altered sales agreement on Thursday at 6pm- I was fired the very next day for escalating the RED FLAG on the FLIP and the discovery of altered sales agreement. BM and HLP rushed file through by employing a LM while the HLU was on vacation who had discussed denying the file and so did the NDS HLU.- I spoke to my manager as to why this file was being rushed to an approval when it was originally set for denial and he acted inappropriately start texting the realtor and making fun/light of what I cited was wrong with the sales agreement so I placed online in the file of all my concerns and went home- I was fired the next day on my scheduled off day.*

I affirm the information I provided is true and correct. I understand a thorough review of my concern(s)/complaint will be conducted. During the course of the review, specific issues may be addressed with my supervisor, my supervisor's manager, human resources, or other people as necessary. I understand that if my concern(s)/complaint results in a formal fact-finding, I am expected to maintain confidentiality of the process and not discuss this matter with anyone at Wells Fargo other than my manager, Human Resources or Employee Relations. I understand that Wells Fargo policy prohibits retaliation towards a team member who raises a concern or complaint and that protection is available to me. I also understand that if I feel that I have suffered retaliation at work that I should contact Human Resources or Employee Relations as soon as possible….*I contacted Glenda prior to the termination regarding the retaliation on the PADILLA application- I also told her I was called in on my off day/offsite -*

*that Friday afternoon the BM sent an email for me to come in for a mandatory meeting at 4pm-I came in earlier at 2pm....he would not let me go use the bathroom as it took me an hour to get there on the bus..called me in the office and stated "WE" decided to terminate you...I asked about my current pipeline of 8 loans totaling close to 2million in volume and he said if they would close in 31 days I would be paid. I have not been paid and it's been over 3 weeks. I have correspondence with Glenda that covers more of the complaint- Please feel free to review our email correspondence. Thank you for your time and attention to this.*

Signature: _____ (Kim Jones)

Date: ___1/4/2017___

Electronic signatures are accepted. This form should be returned to the CLG Employee Relations team via the contact information on the preceding page. If you have difficulty sending the document, please call the HR Advisor Line at 1.866.649.9589 for instructions on where to send it.

You will be notified that these materials have been received.



# 1
Year

# Service Recognition Award

Congratulations for demonstrating the highest caliber of service and excellence to Wells Fargo customers, team members, and shareholders.

## KIM JONES

Thank you,

*John G. Stumpf*

John Stumpf
Chairman, President and CEO
Wells Fargo & Company

Together we'll go far