UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KIM N. JONES                                    CIVIL ACTION

v.                                              NO. 17-8712

WELLS FARGO BANK, N.A.                          SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court is Wells Fargo Bank, N.A.'s motion for summary judgment. For the reasons that follow, the motion is GRANTED.

**Background**

This Title VII employment discrimination and state law whistleblower lawsuit arises from a 58-year-old African American woman's claim that Wells Fargo wrongfully terminated her after 16 months as a home mortgage consultant. Kim Jones alleges that Wells Fargo discriminated against her because of her age (58), her race (African American), and her sex (female) in violation of state and federal antidiscrimination law. In addition to asserting wrongful termination, Jones alleges that she was mistreated because of these protected categories of age, race, and sex. She also alleges state law claims in which she seeks to recover for wrongful termination as a whistleblower, to recover unpaid commissions, and for negligence.

From August 14, 2015 until her termination on December 10, 2016, Kim Jones worked for Wells Fargo as a mortgage loan officer. During her employment, she failed to meet the minimum production standards Wells Fargo required of mortgage loan officers. In September 2016, Wells Fargo placed Jones on a performance improvement plan, which set forth specific requirements she had to meet to remain employed. She failed to meet them. In December 2016, her employment was terminated.

Kim Jones was hired on August 13, 2015 to work as a home mortgage consultant for Wells Fargo Bank at its Metairie, Louisiana location. At that time, Maurice Williams, an African-American male who is about five years older than Jones, managed Wells Fargo's Metairie branch. Williams was responsible for managing the day to day operations of the Metairie branch; hiring and training home mortgage consultants; and ensuring that the branch met Wells Fargo's market-based production goals. Williams interviewed, hired, and supervised Jones. And, he eventually participated in the collective decision to fire her. Williams reported to Area Manager Stephen Cook and Regional Manager Jamie Klinnert; collectively, the three generally made hiring and firing decisions regarding home mortgage consultants like Jones.

As a loan officer or "home mortgage consultant," Jones was responsible for originating residential mortgage loans for Wells Fargo. All mortgage consultants must meet minimum production requirements. Jones signed the Minimum Production Threshold Acknowledgment, which provided that her employment could be terminated if she did not meet the minimum requirements. Jones also signed the Minimum Production Volume Standards Application and Funded agreements, which set forth the production requirements for home mortgage consultants, requiring that they fund at least $5.4 million in loan volume after being in the role for 12 months.

During her first three months working as a home mortgage consultant, Jones was paid an hourly rate. After that interim period, Jones received an hourly draw as an advance on her commissions or incentive payments, which were determined based on the loans she closed. If she did not earn enough commission to cover her hourly draw, she would carry a deficit, also known as being "in the hole."[1]

---

[1] Home mortgage consultants are paid an hourly draw against their commissions. If a home mortgage consultant's commission earnings in a month fail to exceed their hourly pay, then their hourly pay deficit is carried over to the next month. Carrying a deficit is sometimes referred to as being "in the hole." The deficit will carry over until the home mortgage consultant earns sufficient commissions to eliminate the deficit. A home mortgage consultant who has a deficit when her employment terminates, however, is not required to repay the hourly earnings deficit amount.

Jones now says that she disagreed with or took issue with some Wells Fargo processes. For example, as part of the loan origination process, Jones alleges that when a loan application was delayed, Williams on behalf of Wells Fargo ordered her to contact her clients and have them pay a rate lock fee to preserve their original, lower interest rate. Jones says that the delays were not her customers fault, but Williams nevertheless threatened to call customers if she refused. Within the first three months of her employment, as part of a federal audit, Jones alleges that she took issue with her manager again; she says she reported that Williams regularly followed and enforced practices that conflicted with the Equal Credit Opportunity Act. Williams, Jones alleges, supported withholding less desirable loan applications from review and encouraged review by loan officers who were not trained to qualify applicants in order to increase the number of approved applications -- a figure Jones suggests is directly tied to Williams' bonus and compensation. She contends that Williams reprimanded her for "throwing him under the bus."

Jones struggled to meet the home mortgage consultants' minimum production requirements. She first became aware that she was "in the hole" in April 2016. By the end of August 2016, Jones had failed to fund the requisite $5.4 million in loan volume (or 36 purchase units) in the previous 12 months, nor had she funded

$1.35 million in the previous three months; she also had a negative carryover commission balance of $5,129.37. As a result, in September 2016, Williams issued Jones a performance improvement plan (PIP), effective until November 30, 2016. The plan mandated that Jones fund $450,000 in loans each month between September and November 2016.[2] Jones failed to do so.

On December 6, 2016, Williams emailed Human Resources to request a meeting to discuss terminating Jones's employment because she had not met the production requirements of the performance improvement plan. The next day, Williams and Cook spoke with Human Resources Consultant Melissa Pritchard. During the call, Williams stated that Jones had loans in her pipeline, but that she was not timely closing the loans. Williams stated that Jones was resistant to his coaching and failed to follow his instructions for structuring and submitting loans. Cook stated that the pipeline was meaningless if the loans did not close, and

---

[2] Supervisors had access to more leads than non-supervisors. Williams distributed leads for potential customers to home mortgage consultants including Jones. Williams provided Jones with leads weekly; upon request, he gave Jones more leads. In September 2016, Williams gave Jones access to the leads to which Williams had access. And in October 2016, Jones learned how to use the lead tracker system, which allowed Jones to find her own leads. Jones increased her originations and felt that she had a sufficient number of leads by October 2016.

that Jones was not adhering to Wells Fargo's application standards and should not have accepted some of the loan applications.

Jones was out of the office on Friday, December 9, 2016.[3] Williams emailed her and told her that she must report to the office to attend a meeting that afternoon at 4:00 p.m. Wondering why she had to report to the office to attend a meeting on her day off, Jones contacted Human Resources; Senior Employee Relations Consultant Glenda Longren took the call. Jones told Longren that Williams had told her to report to the office and that she (Jones) believed Williams had done something "fraudulent" with a loan.[4] Jones also said she realized that her vacation days had been cancelled in the system. Jones acknowledged that she was on a

---

[3] Jones testified that her "day off was Friday" but that she was working from home, working on leads.

[4] Jones testified that, in the days leading up to her termination, there appeared to be some irregularities with a loan she was handling: the signatures on the loan contract were "scribbled," which led the underwriter to request a new contract (but upper management ended up approving the loan because the underwriter was on vacation), and Williams had told her that the person who signed the contract was actually the son of the seller. Jones testified that she did not know the details. She had also received an automatic alert that the loan she entered might be a "flip" transaction. Jones believed the transaction violated Wells Fargo's lending guidelines because a "flip" transaction might not be worth the value of its sale price. (Nevertheless, Jones also testified that it was not illegal for Wells Fargo to mortgage flipped property). Jones says she had notified Williams of the flip transaction alert, and Williams had led her to believe that the loan would be denied, but then the loan was actually cleared to close the next day (a day or two before she was fired).

performance improvement plan and that her sales were down, and she feared that she would be fired once she reported to the office.

That afternoon, Williams notified Jones that her employment was being terminated because she was "in the hole." At that time, Jones had a negative carryover commission balance of more than $5,000. Jones recalled that Williams told her that she was being terminated because she was either "$9,000" or "$5,000" "in the hole" but Jones believed that she was only $2,300 in the hole; she did not know how many loans she had closed in the last three months before her termination. Jones asked Williams to call Cook, who told Jones that she (Jones) was eligible for rehire and she could always come back. When asked about commissions for loans that had yet to close, Jones alleges she was told that -- consistent with company policy, if the loans closed within 30 days of her termination -- she would receive payment.

Jones submitted a Dispute Resolution Request form on January 3, 2017 and reported that she was unfairly fired after she informed her manager of concerns regarding a purchase agreement related to the borrower's signature and suspicions that it was a "flip" transaction.[5] Notably, Wells Fargo investigated Jones's claims

---

[5] In completing the form, Jones wrote: "Unfair termination – incorrect compensation – retaliation from mgr. –

regarding the irregularities of the loan transaction, as well as Jones's termination from employment. Ultimately, Wells Fargo determined that neither of Jones's complaints had merit.

Milton Dejesus investigated Jones's claims regarding the loan transaction she reported to Longren on December 9. Jones had reported that there may have been a "flip" transaction and that a contract was altered.[6] A "flip" purchase is one in which the buyer buys a home with the intention of selling the home shortly after buying it. Dejesus interviewed Williams, the loan processor, as well as the underwriter who worked on the transaction. Dejesus determined that Wells Fargo's escalation process was properly followed. Dejesus concluded that the purchase in question was not a "flip" transaction and that the contract had not been not altered. Dejesus wrote these additional findings:

> The consistent feedback and evidence points to a culture conflict between Kim [Jones] and Wells Fargo, in that she had her own unique perspective of how things should operate... There seems to be a consistent theme between her files as far as how she failed to follow [Wells Fargo] process or overrule established policy.

---

miscalculation/misrepresentation of sales practices – favoritism and unprofessional work environment."

[6] At that time, she did not report any concerns regarding a rate lock extension fee such as that described in her amended complaint in this case.

Wells Fargo's Human Resources department investigated Jones's allegations regarding her termination. Amy Blair, Employee Relations Consultant, interviewed Williams. Williams told Blair that Jones was getting, but not closing, loans; and that she was not following Wells Fargo's processes. Williams told Blair that customers were upset because they believed their loans were being processed, but Jones had not yet entered them into the system. Williams also explained that after he spoke with Human Resources and Cook on December 7, 2016, he reviewed the loans in Jones's pipeline and determined that most would not close by the end of the month because too many steps were still incomplete.[7] Ultimately, Wells Fargo's Human Resources department independently reviewed Jones's pending loans and determined that Jones was not owed any additional commission, and that there were no unnecessary closing delays.[8]

---

[7] Jones stated that she had not been paid for each loan she had closed. But Jones has not identified any loans that closed within 30 days of her termination for which she failed to receive payment.

[8] Wells Fargo's compensation plan provided that terminated employees like Jones were entitled to receive commission on loans originated by the outgoing employee that closed within 30 days of the employee's termination. Wells Fargo's Human Resources department requested an independent review of Jones's pending loans and determined that Jones had been paid on all loans she had originated and that had closed within 30 days of her termination.

In mid-May 2017, Jones filed with the Equal Employment Opportunity Commission a charge of discrimination against Wells Fargo. On the form, she indicated (by checking boxes) that she was discriminated against on December 9, 2016[9] based on "race" and "sex;" in addition to checking the boxes indicating "race" and "sex" discrimination, Jones checked boxes for "retaliation" and "other: Equal Pay." As to the factual "particulars" of the alleged discrimination, Jones wrote:

> I began my employment with Wells Fargo on August 17, 2015 most recently as Home Mortgage Consultant earning $12.00 per hour. On December 7, 2016, I had a meeting with Branch Manager, Maurice Williams, to discuss the goals for 2017. There was no mention of poor performance plus I was ranked as #2 salesperson. On December 9, 2016, I was terminated by Branch manager, Maurice Williams; Area Manager, Steven Cook; and District Manager, Jamie Kleinart. The company employs over than [sic] 15 persons.

> According to the company, I was discharged for not meeting minimum production standard sales.

> I believe I have been discriminated against because of my sex, Female; race, Black; and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended; and my wages in violation of the Equal Pay Act.

---

[9] Jones indicated that December 9 was both the "earliest" and "latest" "date(s) [on which] discrimination took place." Jones did not check the box indicating "continuing action."

Other than this allegation in this EEOC Charge, Wells Fargo did not receive an amended charge or any other documents describing or explaining the factual basis for Jones's claim.

On September 6, 2017, Ms. Jones, pro se, sued Wells Fargo, Stephen Cook, Jamie Klinnert (improperly named as Jaime Kleinhart), and Maurice Williams, alleging that she was fired because of her whistleblowing, refusing to participate in illegal activity, engaging in protected activity, and because of race, sex, and age discrimination. After retaining counsel, Ms. Jones amended her complaint alleging that she was discriminated against based on her age, sex, and race; that Wells Fargo retaliated against her because she reported and refused to participate in mortgage fraud; and that Wells Fargo failed to pay her timely earnings and commissions. Specifically, Jones alleges causes of action in violation of various federal laws including: (1) The Age Discrimination in Employment Act, 29 U.S.C. § 621;[10] (2) Title VII disparate treatment based on gender;[11] and (3) Title VII disparate

---

[10] Jones alleges she was discriminated against on the basis of age and that younger similarly situated employees with similar production numbers were not terminated.

[11] Jones alleges Williams treated her differently than the rest of the team by not inviting her to team lunches, not celebrating Jones's birthday, and yelling and berating Jones in front of other employees.

treatment based on race.[12]  Jones also alleges the same conduct she experienced while employed at Wells Fargo violates various Louisiana state laws including: (a) the Louisiana Employment Discrimination Law, La.R.S. 23:301, intentional discrimination on the basis of age, gender, and race; (b) retaliation against a whistleblower under La.R.S. 23:967;[13] (c) failure to timely pay commissions under La.R.S. 23:631 and La.R.S. 51:443; and (d) negligent hiring, retention, and supervision under La. C.C. art. 2315.[14]  The plaintiff's claims against Maurice Williams, Stephen Cook, and Jamie Klinnert were dismissed without prejudice for failure to prosecute.  Wells Fargo now moves for summary relief.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to

_____

[12] Jones contends she suffered many instances of her loans being unduly delayed, miscalculated, and cancelled along with refusal to refer business to her and customer complaints spurred by the intentional mishandling of Jones's files by loan processors. Jones alleges that the racial discrimination was reported to the branch manager, Williams, but he shrugged off the complaints.  Wells Fargo allegedly created new positions for three Caucasian loan officers, who had poor production performance, instead of terminating them.
[13] Jones alleges that Wells Fargo terminated her in retaliation when she reported and refused to participate in mortgage fraud and the Rate Lock Extension Fee Scheme.
[14] Jones submits that Wells Fargo failed to fire or discipline Williams or other supervisors after it knew of the discrimination and retaliation.

judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable ... or is not significantly

13

probative," summary judgment is appropriate. <u>Id.</u> at 249 (citations omitted); <u>King v. Dogan</u>, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of her case. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>see</u> <u>also</u> <u>McClendon v. United States</u>, 892 F.3d 775, 781 (5th Cir. 2018)("When the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.") In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Antoine v. First Student, Inc.</u>, 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

In resolving a motion for summary judgment, the Court "may only consider admissible evidence." Coleman v. Jason Pharmaceuticals, 540 Fed. Appx. 302, 306 (5th Cir. 2013)(citing Fed. R. Civ. P. 56(c)(2) and Mersch v. City of Dallas, 207 F.3d 732, 734-35 (5th Cir. 2000)). Federal Rule of Evidence 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Affidavits and declarations used to support a motion must only "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## II.

### *A.*

Title VII of the Civil Rights Act of 1964 was enacted "to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800 (1973). Employers are prohibited from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Moreover, "an employer may not discriminate against an employee because the employee has 'opposed any practice made an unlawful employment practice ... or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." See LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 388 (5th Cir. 2007)(omission in original)(quoting 42 U.S.C. § 2000e-3).

Although a plaintiff may prove her claim of intentional discrimination by direct or circumstantial evidence, there is nothing in the record to indicate that Jones has direct evidence; accordingly, absent direct evidence of disparate treatment or retaliation, Jones must prove her case through circumstantial evidence. See McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007).

Claims of discrimination based on circumstantial evidence are analyzed in accordance with the familiar McDonnell Douglas burden-shifting regime. See Caldwell v. KHOU-TV, 850 F.3d 237, 241 (5th Cir. 2017)(citing McDonnell Douglas, 411 U.S. at 800). This three-part framework first requires the plaintiff to make a prima facie case of discrimination. Morris v. Town of Independence, 827 F.3d 396, 400 (5th Cir. 2016). If the plaintiff makes this showing, a

16

presumption of discrimination arises and the burden of production shifts to the defendant employer to articulate a legitimate non-discriminatory or non-retaliatory reason for the adverse employment action. Id. If the defendant satisfies that burden of production, then the inference of discrimination disappears, and the burden shifts back to the plaintiff, who must prove by a preponderance of the evidence that the proffered reason was merely a pretext for race (or sex or age) discrimination. Rogers v. Pearland Ind. Sch. Dist., 827 F.3d 403, 408 (5th Cir. 2016).[15] "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Thomas v. Johnson, 788 F.3d 177, 179 (5th Cir. 2015). Notably, the Court does not assess the credibility of the employer's explanation. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)(explaining that the defendant's burden is one of production, not persuasion). To prove pretext, the plaintiff must demonstrate "*both* that the reason was false, *and* that

---

[15] Instead of pretext, a plaintiff may seek to establish that the plaintiff's protected characteristic or the employer's discriminatory animus was a motivating factor for the adverse employment decision. But the plaintiff here has not advanced this mixed motive argument, ostensibly opting to pursue a singular theory of pretext.

discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (2007)(emphasis in original).[16]

To establish a prima facie case of employment discrimination, a plaintiff must establish that she (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was treated less favorably than a similarly situated employee outside of her protected group under nearly identical circumstances. Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009); Bryan v. McKinsey & Co., Inc., 375 F.3d 358, 360 (5th Cir. 2004).[17]

---

[16] The Age Discrimination in Employment Act prohibits an employer from firing an employee "because of such individual's age". 29 U.S.C. § 623(a)(1). To establish an ADEA claim, a plaintiff must "prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009). Although the Supreme Court "has not definitely decided whether the evidentiary framework of [*McDonnell Douglass*], utilized in Title VII cases is appropriate in the ADEA context," Gross, 557 U.S. at 175-76 n.2, the Fifth Circuit has applied it since Gross. See, e.g., Holliday v. Commonwealth Brands, Inc., 483 Fed. Appx. 917, 921 (5th Cir. 2012); Manaway v. Med. Ctr. of Southeast Tex., 430 Fed. Appx. 317, 321 (5th Cir. 2011); Moss v. BMC Software, Inc., 610 F.3d 917, 922-23 (5th Cir. 2010); Jackson v. Western Packaging Corp., 602 F.3d 374, 378 (5th Cir. 2010) ("[W]e are bound by our circuit precedent applying McDonnell Douglas to age discrimination cases.").

[17] Similarly, applying McDonnell Douglas to age discrimination claims, the plaintiff's prima facie case must show: (1) she was discharged; (2) she was qualified for the position; (3) she was within the protected class at the time of the discharge; and (4) she was either i) replaced by someone outside the protected class,

Only ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating constitute adverse employment actions in the context of Title VII disparate treatment claims. Thompson v. City of Waco, 764 F.3d 500, 503-05 (5th Cir. 2014); see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 62 (2006)(explaining that the language of Title VII's antidiscrimination provision "explicitly limit[s] the scope of that provision to actions that affect employment or alter the conditions of the workplace").

*B.*

A plaintiff must exhaust her administrative remedies before pursuing employment discrimination claims in federal court. Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002); Melgar v. T.B. Butler Publishing Company, Inc., 931 F.3d 375, 378-79 (5th Cir. 2019)(citations omitted). This exhaustion

---

ii) replaced by someone younger, or iii) otherwise discharged because of her age. Holliday, 483 Fed.Appx. at 921 (citation omitted). And, then, the familiar burden-shifting framework continues: After the employee establishes a prima facie case, the burden of production shifts to the employer to articulate a "legitimate, nondiscriminatory reason for terminating the plaintiff." Id. If the employer articulates a legitimate, non-discriminatory reason for terminating the employee, the plaintiff must then rebut the employer's purported explanation by showing that the employer's reason is pretextual. Moss, 610 F.3d at 922.

occurs when the complainant files a charge with the Equal Employment Opportunity Commission, § 2000e-5(e)(1), (f)(1); 29 U.S.C. § 626(d), and then "receives a statutory notice of right to sue." Taylor, 296 F.3d at 379. This charge-filing prerequisite to suit is a non-jurisdictional claim-processing rule that "promote[s] the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." Fort Bend Cnty., Texas v. Davis, 139 S. Ct. 1843, 1849 (2019).

To determine whether a Title VII plaintiff exhausted her administrative remedies, the Court broadly construes the scope of an EEOC complaint to advance Title VII's primary purpose, which "is to trigger the investigatory and conciliatory procedures of the EEOC, in an attempt to achieve non-judicial resolution of employment discrimination claims." Pacheco v. Mineta, 448 F.3d 783, 788-89 (5th Cir. 2006)(citations omitted). "[W]hat is properly embraced in a review of a Title VII claim," the Fifth Circuit has thus instructed, is not confined to the administrative charge itself, but is informed by "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. at 789; Fellows v. Universal Restaurants, Inc., 701 F.2d 447, 451-52 (5th 1983)("a cause of action for...employment discrimination may be based, not only upon

the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination."); Sanchez v. Standard Brands, Inc., 431 F.2d 455, 465-467 (5th Cir. 1970)("[T]he specific words of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow."). The factual statement contained in the charge is "the crucial element." Price v. Southwestern Bell Telephone Co., 687 F.2d 74, 78 (5th Cir. 1982)(citation omitted).

*C.*

Wells Fargo submits that Jones failed to exhaust any claim she seeks to advance for wrongful termination based on her age and that she also failed to exhaust any claims for general mistreatment. The Court agrees.

Could Jones's charge be expected to trigger an age discrimination investigation? The Court looks beyond Jones's mere failure to check the "age" box as a mere technical omission (see Sanchez, 431 F.2d at 462) and considers the factual statement Jones wrote to support her EEOC charge. Unlike the plaintiff in Sanchez, nowhere in Jones's charge did she allege any facts that

would give rise to an age discrimination claim. Jones mentions sex and race discrimination as well as unequal pay, but she fails to state any facts regarding age.  She fails to suggest how her charge might have put Wells Fargo on notice of any age discrimination claim.

This same reasoning precludes her "discriminatory mistreatment" claims which are untethered to her wrongful termination claims.  Again, the Court scrutinizes the charge to determine what sort of investigation would be triggered by its factual narrative.  Jones checked both the "sex" and "race" boxes in her charge and stated in the "facts" portion of the charge that she believed that Wells Fargo discriminated against her based on her race and sex.  The factual narrative and the lone date (the "date(s) discrimination took place") she invokes in her charge refer solely to her termination and to the date of termination. Jones testified in her deposition that she was excluded from lunches, her coworkers and supervisors failed to celebrate her birthday, and she was called "baby" and by the wrong name. However, she fails to suggest how these alleged slights fall within the scope of her EEOC charge.  How an investigation into these examples of alleged mistreatment could be expected to grow from the limited narrative presented in her charge is unclear.  Because the factual summary in her charge failed to contain allegations

22

giving rise to any sort of cumulative mistreatment facts or hostile work environment claims, any such claims must be dismissed for failure to exhaust administrative remedies.

Regardless of her failure to exhaust claims relating to age discrimination and general "mistreatment," Wells Fargo nevertheless has demonstrated entitlement to judgment as a matter of law dismissing these claims.[18] As to the general "mistreatment" claims, if they had been exhausted, they nevertheless fail as a matter of law. Unlike her claim that she was wrongfully terminated based on protected characteristics of race and sex, Jones's claims of mistreatment fail to implicate Title VII, fail to constitute adverse employment actions,[19] and otherwise fail to satisfy the severe or pervasive conduct test applicable to hostile work environment claims. See Lauderdale v. Texas Dept. of Criminal Justice, 512 F.3d 157, 163 (5th Cir. 2007)(to show that harassment or mistreatment affects a term of condition of employment, it must be "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working

---

[18] Jones's age discrimination is addressed on the merits below along with her claims that her employment was terminated based on other protected characteristics.

[19] Adverse employment actions are limited to ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating. McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007); Anthony v. Donahoe, 460 Fed.Appx. 399, 403 (5th Cir. 2012).

environment.'"). To be sure, Title VII "is not a 'general civility code[.]'" Id. (citation omitted). That Jones initially lacked access to sales leads, was called "Teresa" or "Baby" on two or three occasions, was not included in discussions about sports, was not invited to lunches, and that her birthday was not celebrated,[20] at most, constitute mere "petty slights, minor annoyances, and simple lack of good manners." See Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 485 (5th Cir. 2008)(quoting Burlington Northern and Santa Fe Railway Co. v. White, 548 U.S. 53, 60, 67 (2006)). Any Title VII claims based on anecdotal "mistreatment," divorced from her termination claim, fail as a matter of law.

III.

Jones alleges violations of the ADEA for age discrimination, violations of Title VII of the Civil Rights Act of 1964 including gender and race discrimination, violations of the LEDL for age,

---

[20] Jones testified that Williams' wife was named Teresa, that he called her "baby" a couple times, which offended her "but I hear other people say baby a lot in New Orleans," and that Williams told Jones regarding her relationship with two loan processers, "you black females have to get along. You guys have to cut that out." Jones suggests in conclusory fashion that this is "direct evidence of discrimination" and that she was insulted that he suggested she "didn't get along" with certain people. Jones complained in an email to Williams on August 5, 2016 about a loan processor Jones called Shenea; Jones suggested in the email that they do not get along and she was being treated unprofessionally by Shenea.

gender, and race discrimination, a violation of La. R.S. 23:967
for a whistleblower claim, a violation of La. R.S. 23:631 and
51:443 for untimely payment of commissions, and negligent hiring
retention, and supervision in relation to Wells Fargo's employees.
Wells Fargo seeks summary judgment in its favor on each claim.

*A.*

The Court first takes up whether Wells Fargo is entitled to
summary judgment dismissing Jones's wrongful termination claims
based on discrimination. The record shows that it is.

Even assuming Jones makes out a prima facie case of age, race,
or sex discrimination, it is undisputed that Wells Fargo
articulated a legitimate nondiscriminatory reason for terminating
her employment: Jones failed to meet minimum production
requirements. Having satisfied its burden of production in
articulating this reason for termination, the burden shifts back
to Jones, who must show by a preponderance of the evidence that
this proffered reason was merely a pretext for discrimination.
Jones fails to identify a genuine dispute as to any material fact
concerning pretext. She fails to identify evidence in the record
indicating that Wells Fargo's proffered non-discriminatory
explanation is false. (Indeed, she does not dispute that she
failed to meet minimum production requirements). She likewise

25

fails to identify evidence indicating that discrimination was the real reason her employment was terminated.

The plaintiff argues that Wells Fargo's reason for termination -- that she failed to meet performance standards -- was merely a pretext and that the plaintiff was actually "discriminated against...and excluded from the same opportunities as others making it impossible for her to meet her performance standards and keep her job." But she fails to point to any evidence in the summary judgment record that supports a finding of, or creates a factual dispute concerning, pretext. She fails to invoke similarly situated individuals who were younger than her, male, or non-African American who failed to meet production standards and yet were treated more favorably.

Jones's argument that Wells Fargo's nondiscriminatory reason for her termination was a mere pretext is based on unsubstantiated assertions and conjecture. Jones has not produced evidence that any nearly identically situated home mortgage consultant was treated more favorably than she was. At any given time in her various submissions, she purports to identify 10 or more possible comparators (and has continued to request additional discovery so that she can seek "potentially more" comparators even beyond the Metairie branch and beyond those supervised by Williams). But

none of the proffered comparators create a genuine dispute about any material fact concerning pretext; rather, each supports Wells Fargo's submission that it merely enforced its home mortgage consultant performance standards objectively across-the-board. Consider these alleged comparators:

- Carl Osborne, a younger male home mortgage consultant, was terminated by Williams for failure to meet minimum production requirements on July 18, 2016.
- Jonathan Lily's employment ended almost exactly on his 12-month employment anniversary; Wells Fargo did not have the opportunity to issue Lily a performance improvement plan or address his future performance.
- After Russell Flowers had worked at the Metairie branch for six months, Williams was replaced as branch manager and no longer managed Flowers. Jones does not contend that Flowers' production after 12 months was comparable or lower than her 12-month production level.
- Scarlett Alaniz was a non-African American home mortgage consultant whom Jones submits was terminated for failing to meet minimum production requirements. Jones does not explain how Alaniz's situation is relevant, material, or how it supports her claims in the case. Nor does she cite to evidence relating to Alaniz's production levels.
- Erica Poole, a home mortgage consultant, was younger than Jones and non-African American. Poole was also placed on a PIP by Williams for failure to meet minimum production requirements. The PIP was issued to Poole on December 21, 2016 and was scheduled to be in effect through February 28, 2017, but Poole resigned from Wells Fargo before the PIP ended.
- Debbie Hebert was a home mortgage consultant like Jones. She was not placed on a PIP or terminated. However, Jones has failed to show that she was nearly identical as a comparator because, according to the undisputed portion of the summary judgment record, Hebert met the minimum production requirements for home mortgage consultants.
- Rebecca McGilvray was placed on a PIP in March 2016 for failure to meet minimum production requirements. The summary

judgment record shows that, unlike Jones, McGilvray's production increased and she met the PIP requirements.

- Elizabeth Poole began working for Wells Fargo as a home mortgage consultant on February 10, 2016, but she was fired on July 19, 2016 for failure to meet minimum production requirements.

- Marilyn "Ann" Sheffield voluntarily resigned from her employment with Wells Fargo in November 2015.

- Joe Bellows, who was 38 years old and a non-African American, was a retail sales supervisor before he was demoted to a home mortgage consultant position. Williams issued Bellows a PIP because he failed to meet minimum production requirements in May 2016. Bellows' production improved, and he met the terms of the May 2016 PIP. In the latter part of 2016, his production decreased, and Bellows was issued another PIP in January 2017.

Jones's kitchen-sink, scattershot approach to identifying potential comparators undermines, rather than supports, her discrimination claim or attempt to prove pretext. Jones claims that some comparators did not meet minimum performance requirements but were not fired. But there is no dispute that that these individuals' tenures as home mortgage consultants was short-lived and in the other capacities in which they worked, they were not required to abide by the same performance standards:

- Brock Ryder worked as a home mortgage consultant for a few months, but then he worked in a different position (as a home mortgage *assistant* until December 2016) and, therefore, was not required to meet the minimum performance requirements of a home mortgage consultant. Ryder became a junior home mortgage consultant in December 2016 and resigned one month later.

- Mike Grout was a home mortgage consultant for the first three months of his employment until October 2015, when he became a junior home mortgage consultant until February 2016, when he resigned. For the majority of his employment with Wells

Fargo, Grout was not a home mortgage consultant, and he was therefore not required to meet the same requirements as Jones.

Regarding the state of the record concerning Ryder and Grout, Jones takes issue with one of the defendant's affiants, Amy Blair. Blair, Wells Fargo's Employee Relations Manager, stated (and Jones does not dispute) that Brock Ryder was a home mortgage associate (not consultant) during most of Jones's employment. Jones notes, however, that Blair fails to state in her sworn declaration that Brock Ryder was a home mortgage consultant for a few months before he became a home mortgage associate. Jones also takes issue with Blair's statement that Mike Grout was a home mortgage associate when, in fact, he was a home mortgage consultant before he became a junior home mortgage consultant in October 2015 and then he eventually resigned in February 2016. Wells Fargo moves to withdraw the single incorrect statement in Blair's declaration (the first sentence of paragraph 10); the request is granted.[21] Regardless, Jones fails to offer any contested _material_ facts and she fails to suggest how either Grout or Ryder were treated more

---

[21] Jones also takes issue with Blair's sworn declaration insofar as Blair "fails to mention Scarlett Alaniz." Blair's declaration, Wells Fargo explains, addressed those 10 employees Jones identified in her deposition as those treated more favorably under similar circumstances. Jones did not identify Alaniz in her deposition. And for good reason: as discussed, Alaniz was not treated more favorably -- Alaniz's employment was terminated for failing to meet minimum production requirements. Just like Jones.

favorably as nearly identical comparators.  Both worked briefly as home mortgage consultants before being demoted to home mortgage associate and junior home mortgage consultant.  The summary judgment record shows that, during the brief time that either may have been similarly situated as Jones, neither were treated more favorably, having been demoted after being in the home mortgage consultant position for just a few months.[22]  A position Jones occupied for 16 months despite the record reflecting that she failed to meet production requirements.

In short, Jones identifies no factual controversy in the record to raise a material issue as to whether her termination was based on any of the three protected characteristics she invokes. The summary judgment record shows that home mortgage consultants

---

[22] Insofar as Jones now seeks to present yet another theory of disparate treatment, a failure to demote theory (i.e., that she should have been demoted to home mortgage assistant before being fired), any such claim is barred.  Jones fails to point to any record evidence to indicate that she told Wells Fargo that she wanted to be demoted to work as an administrative assistant (home mortgage assistant) or a junior home mortgage consultant.  Nor did she mention or include any facts regarding a failure to demote claim to the EEOC.  Having failed to show how a failure to demote claim could reasonably be expected to grow out of her charge of discrimination, the Court declines to consider this theory on the merits.  Jones also (now) appears to challenge, as a discriminatory practice, her placement on a performance improvement plan. But she does not dispute that the decision to do so was based on her failure to meet objective production requirements applied to all home mortgage consultants.  Jones admitted in her deposition testimony that she did not meet her 12-month loan volume requirement.

were treated consistently regardless of their race or other demographic characteristics; that objective performance criteria drove Wells Fargo's decision to terminate (and issue PIPs to) underperforming home mortgage consultants. Given that the plaintiff has failed to point to record evidence in support of her suggestion that she was treated differently than nearly identically situated employees who were younger or male or of a different race than her, the Court declines to indulge the plaintiff's argumentative tangential distortions by addressing each and every "potential" comparator or by permitting a fishing expedition into other home mortgage consultants supervised by different managers in other Wells Fargo offices.

Jones has failed to identify any evidence indicating that she was replaced by someone outside of her race, gender, or age. And she fails to identify any similarly situated comparator who was treated more favorably. In fact, the summary judgment record is replete with examples of Wells Fargo employees of varying ages, genders, and races, being disciplined or terminated for failing to meet the company-wide production requirements. Jones's "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." See Brown v. City of Houston, 337 F.3d 539, 541 (5th Cir. 2003). Because Jones has failed to demonstrate that

Wells Fargo's reason for terminating her was false and she fails to demonstrate that her termination had any connection to her race, sex, or age, Wells Fargo is entitled to summary relief dismissing her Title VII (and identical state discrimination law) claims.

In addition to failing to identify any similarly situated comparators who were younger and non-African American and treated more favorably, thereby failing to prove or create a fact issue on pretext, Jones fails to rebut the same actor inference. The record also shows that Jones was hired and, 16 months later, fired by Williams, an African American who is five years older than Jones.[23] On this record, Wells Fargo urges the Court to apply the "same actor inference," which is "a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue." Spears v. Patterson UTI Drilling Co., 337 Fed.Appx. 416, 421-22 (5th Cir. 2009); Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996)(approving application of same actor inference in age discrimination case), abrogated on other grounds by Reeves v.

_____

[23] Jones does not dispute that Williams interviewed Jones and hired her as a home mortgage consultant. It is likewise undisputed that the decision to terminate Jones's employment was unanimous; that decision was made collectively by Williams, Jamie Klinnert, and Steve Cook. Williams testified that he participated in the decision to terminate Jones, the decision was unanimous, and that "[e]motionally, I didn't [want to fire Jones,] but with all the facts and the numbers, we had to."

Sanderson Plumbing Prods., Inc., 530 U.S. 133, 134 (2000); Corley
v. Louisiana ex rel. Div. of Admin., Office of Risk Mgmt., 816 F.
Supp. 2d 297, 318 (M.D. La. 2011), aff'd, 498 Fed.Appx. 448 (5th
Cir. 2012)(holding that plaintiff could not establish prima facie
case that race was a motivating factor in her termination where
the same supervisor who hired her was also involved in the decision
to terminate her employment).  "While evidence of [same actor]
circumstances is relevant in determining whether discrimination
occurred," the Fifth Circuit has "decline[d] to establish a rule
that no inference of discrimination could arise under such
circumstances."   Haun v. Ideal Indust., Inc., 81 F.3d 541, 546
(5th Cir. 1996).   In other words, the same actor inference is
neither mandatory nor irrebuttable.  Nevertheless, where, as here,
the non-moving party has otherwise failed to raise a genuine
dispute as to a material fact, the same actor inference simply
reinforces the defendant's submission with respect to Jones's age
and race discrimination claims.[24]

---

[24] Courts have recognized that the inference is stronger when (1)
there is close temporal proximity between the favorable employment
action and the adverse action, and (2) the decision maker is in
the same protected category as the plaintiff.  See Proud v. Stone,
945 F.2d 796, 797 (4th Cir. 1991)(When termination "occurs within
a relatively short time span following the hiring, a strong
inference exists that discrimination was not a determining factor
for the adverse action taken by the employer.");  Skinner v. Brown,
951 F. Supp. 1307, 1320 (S.D. Tex. 1996), aff'd 134 F.3d 368 (5th
Cir. 1997)(where the decision maker was in the same protected

The record shows that Wells Fargo is entitled to summary judgment on Jones's claim of wrongful termination based on age, sex, and race. Even if she makes out a prima facie case, she failed to identify a fact issue as to pretext concerning Wells Fargo's legitimate, non-discriminatory reason for termination. Notably, she does not dispute nor is there any dispute in the record that she failed to meet minimum production requirements. Thus, she has failed to show that Wells Fargo's proffered reason for termination was false. Likewise, she fails to show that discrimination based on her age, sex, or race was the real reason she was fired: there is no evidence in the record supporting her allegation of disparate treatment based on her age, sex, or race. The summary judgment record shows that Jones was fired because she never met the objective performance measures required of all mortgage loan consultants at Wells Fargo. Summary judgment

category as the plaintiff, the court noted "[t]hese facts enhance the inference that no discriminatory motive existed."); Chapman v. Dallas Morning News, L.P., No. 06-2211, 2008 WL 2185389, at *9 (N.D. Tex. May 27, 2008)(noting that the plaintiff and the decisionmaker are in the same protected category, and that the plaintiff's purported comparator "evidence appears to even undermine her claims"). Both of these factors are present here.

dismissing all of Jones's employment discrimination claims is warranted.[25]

The Court now turns to consider her state law claims, taking up first her claim in which she alleges that she was fired for whistleblowing.

*B.*

Wells Fargo next contends that Jones's vague and unsubstantiated allegations are insufficient to oppose its motion for summary judgment dismissing her whistleblower claim under La.R.S. 23:967. Jones's whistleblower claim is predicated on her belief that Wells Fargo terminated Jones when she refused to participate in "mortgage fraud" and a "rate lock extension fee scheme" or because she reported such conduct. Wells Fargo submits that her whistleblower claim fails as a matter of law. The Court agrees.

Louisiana's Whistleblower Statute provides, in part:

A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of the law:

---

[25] Jones failed to exhaust her age discrimination and "mistreatment" claims and she likewise fails to demonstrate how her age, sex, or race played a part in Wells Fargo's decision to terminate her as a home mortgage consultant. Jones's claims under the Louisiana Employment Discrimination Law fail for the same reasons as her federal claims.

(1)  Discloses or threatens to disclose a workplace act or practice that is in violation of state law.

(2)  Provides information to or testifies before any public body conducting investigation, hearing, or inquiry into any violation of law.

(3)  Objects to or refuses to participate in an employment act or practice that is in violation of law.

La. R.S. 23:967. To prevail, Jones must establish that (1) Wells Fargo violated the law through a prohibited workplace act or practice; (2) she advised Wells Fargo of the violation; (3) she then refused to participate in the prohibited practice or threatened to disclose the practice; and (4) she was fired as a result of her refusal to participate in the unlawful practice or threat to disclose the practice.  See Hale v. Touro Infirmary, 886 So. 2d 1210, 1216 (La. App. 4 Cir. 11/3/04).  Notably, to prevail, then, Jones must show, among other things, "that [Wells Fargo] engaged in workplace conduct constituting an actual violation of state law," and that she notified Wells Fargo of the state law violation and threatened to disclose it.  See Williams v. Hosp. Servs. Dist. Of W. Feliciana Parish, Louisiana, 250 F. Supp. 3d 90, 94-95 (M.D. La. 2017)(quoting Encalarde v. New Orleans Ctr. for Creative Arts/Riverfront, 158 So. 3d 826 (La. 2015)). Failure to put forth evidence to satisfy any of these elements must result in a summary judgment in favor of Wells Fargo.

36

Summary judgment in Wells Fargo's favor is patently
warranted. Jones testified that she has no personal knowledge of
any violation of state law by Wells Fargo; she never complained
about an actual violation, nor did she refuse to engage in illegal
conduct. Although she invokes the talisman of "fraud" in
connection with what she mused could be irregularities in
processes, including the "scribbled" flip transaction contract and
the rate lock extension fees, she admitted that none of the
transactions that she personally encountered actually violated
state law. In argument, she suggests that she "put...in writing"
her complaint to Williams, and also that she "told him face to
face" "about her issues" with the rate lock scheme, which she
testified she believed "violated something." The emails Jones
invokes, however, mention no violation of state law and appear to
only address Jones's dispute with another employee named Shenea,
who said aloud (allegedly about Jones) "some people can't read" or
"some people are really [dumb or stupid]."[26]   Although in her

---

[26] In an email on August 5, 2016, Jones wrote to Williams requesting
a new processing assignment because Shenea "chastise[d] me" and
was unprofessional. Jones also suggested that "the customer should
not have to pay extension fees we could avoid and it hurts my
loyalty scores."   Jones stated that she "didn't like" that her
customers might have to pay "more than what [I] promised" and that
they "should not have to pay an extension fee due to the previous
[processor]" failing timely to complete a processing task.   Jones
has not identified any customer who was forced to pay a rate lock
extension fee, or any Louisiana law that would be violated if such

complaint she alleges in conclusory fashion that she "had a reasonable belief" that Wells Fargo violated state and federal laws, nowhere does she identify actual violations of state law, nor does she point to record evidence indicating that she advised Wells Fargo of those violations. Jones testified in her deposition that she was concerned that her customers would give her poor reviews or not refer business to her if they incurred extension fees, not that she believed charging such fees violated state law. Absent any evidence on these threshold elements of her state whistleblower claim (that state law was violated and that she advised Wells Fargo of the violation), her claim fails as a matter of law. Jones's claim for retaliation as a whistleblower under La. R.S. 23:967 must be dismissed.

*C.*

Wells Fargo next moves for summary judgment dismissing her unpaid commissions claim. Jones has failed to identify any loans she originated that closed within 30 days of her termination for

---

a fee had been charged. Her whistleblower claim fails. See Wilson v. Tregre, 787 F.3d 322, 327 (5th Cir. 2015)(citations omitted, emphasis added)("To qualify for protection under the Louisiana Whistleblower Statute, a plaintiff must prove that [her] employer committed an actual violation of state law.").

which she was not paid.[27]  Therefore, summary judgment dismissing this "claim" is warranted.

*D.*

Jones alleges that Wells Fargo is liable in tort for negligent hiring, retention, and supervision under Louisiana Civil Code article 2315.  But a plaintiff cannot recover for negligence based upon the same conduct underlying an employment discrimination claim.  <u>Jones v. Children's Hosp.</u>, 58 F. Supp. 3d 656, 669-70 (E.D. La. 2014).  Indeed, as another Section of this Court observed:

> Louisiana's worker's compensation statute bars any negligence cause of action that plaintiff might otherwise have against her former employer [and] violations of anti-discrimination laws do not of themselves give rise to general tort liability, although they might meet the definition of 'fault' under Civil Code article 2315.  To hold otherwise would abrogate the legislative remedial scheme for redressing employment discrimination.

<u>Weathers v. Marshalls of MA, Inc.</u>, No. 02-717, 2002 WL 1770927, at *3 (E.D. La. July 31, 2002)(Engelhardt, J.)(citations omitted).

---

[27] Jones argues that she believes that "Wells [Fargo] deliberately held her loans so that commissions would not have to be paid." But she offers no evidence in support of this assertion.  Although she generally disputes whether she should have been paid on some unidentified loans, she fails to identify a genuine dispute as to any material fact on this issue.  It is undisputed that Wells Fargo researched each loan transaction originated by Jones before her termination and produced the findings from that investigation. Jones fails to identify how much compensation she is owed and for which loans.

The plaintiff's negligence claims based on the same conduct forming her employment discrimination claims must be dismissed.[28]

Accordingly, for the foregoing reasons, IT IS ORDERED that the defendant's motion for summary judgment is GRANTED.[29] The plaintiff's claims are hereby dismissed with prejudice.

New Orleans, Louisiana, September 23rd 2019

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[28] Jones appears to take issue with this principle of law and attempts to circumvent it by concluding that her negligence claims are beyond the scope of her employment discrimination claims. But when she attempts to explain how this is so, she simply argues that her supervisor admitted to using cocaine. (As if the Court may on summary judgment invoke a formula: supervisor's cocaine usage plus alleged wrongful termination of employee equals negligence under Louisiana law). Jones suggests that Williams shared this information concerning his cocaine use with other employees and perhaps Wells Fargo was aware of this and did not correct it. (Her "argument" such as it is in support of any negligence claim that could arise from this "fact" stops there). Plaintiff's counsel's unsupported and extraneous cherry-picking is the sort of confounding and frivolous "argument" (or personal attack) that 28 U.S.C. § 1927 is intended to dissuade.

[29] Her request to reopen discovery to continue searching for potential comparators is denied as moot.